**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

BRYCE R. SWEENEY,

       Plaintiff,

v.

HOME DEPOT U.S.A, INC. d/b/a "THE HOME DEPOT", and
EQUIPMENT DEVELOPMENT CO., INC.

       Defendants.
_____

**ORIGINAL COMPLAINT AND JURY TRIAL DEMAND**
_____

TO THE HONORABLE COURT:

Plaintiff, BRYCE R. SWEENEY, files this Complaint against Defendant HOME DEPOT U.S.A., INC. d/b/a "THE HOME DEPOT", and Defendant EQUIPMENT DEVELOPMENT CO., INC., (collectively "Defendants") in support thereof, respectfully shows the court as follows:

### I.  PARTIES

1. Plaintiff BRYCE R. SWEENEY ("Mr. Sweeney" or "Plaintiff") is an individual who resides at 1220 Fillmore Street, Denver, Colorado 80206-3336.

2. Defendant, HOME DEPOT U.S.A., INC. d/b/a THE HOME DEPOT ("Home Depot") is a Delaware corporation, with its principal place of business located at 2455 Paces Ferry Road, Atlanta, GA 30339.  HOME DEPOT is a non-resident Delaware corporation, doing business in Denver, Colorado.  HOME DEPOT may be served with process through its

registered agent for service of process, Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, CO 80120.

3.      Defendant, EQUIPMENT DEVELOPMENT CO., INC., ("EDCO") is a Maryland corporation, with its principal place of business located at 100 Thomas Johnson Drive, Frederick, MD 21702-4305.  EDCO is a non-resident Maryland corporation, doing business in Denver, Colorado.  EDCO may be served with process through its registered agent for service of process, William Harding, 100 Thomas Johnson Drive, Frederick, MD, 21702-4600.

## II.  JURISDICTION & VENUE

4.      The amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, attorney fees and costs.  This court has jurisdiction of this case by reason of the amount in controversy and by reason of a complete diversity of citizenship.

5.      Defendants have purposefully availed themselves of the privileges and benefits of placing their services and goods into the stream of commerce in Colorado and thereby conduct business in the State of Colorado.

6.      The Court's exercise of personal jurisdiction over Defendants comports with due process.

7.      At all times material to the cause of action asserted herein, Defendants have had continuing and systematic contact with the State of Colorado by delivering its goods to consumers, distributors, and retailers in Colorado, including the floor stripper in question: the EDCO TS-8 Tile Shark ("Tile Shark").

8. At all times material to the incident made the basis of this suit, Defendants were conducting and continue to conduct business in and throughout the District of Colorado.

9. The incident made the basis of this suit occurred in the District of Colorado.

10. Venue in this case is proper in the District of Colorado by virtue of Title 28 U.S.C. §1391 (b)(2).

### III.  FACTUAL BACKGROUND

11. Mr. Sweeney suffered a partial thumb amputation while adjusting the angle setting of an EDCO TS-8 Tile Shark rented from The Home Depot Store No. 1505 located at 500 S. Santa Fe Drive in Denver, Colorado.

**A. The Floor Stripper in Question**

12. Mr. Sweeney rented a floor stripper on June 19, 2022. The Rental Agreement included a Customer Safety and Operation Guide for a PRO Floor Stripper ("PRO Safety Guide") as well as a Customer Safety and Operation Guide for an FCS16 RIP-R-STRIPPER® v1.1 ("RIP-R Safety Guide"). Neither "safety guide" contains a warning with respect to adjusting the angle of the floor stripper. While the Tile Shark has warnings about placing your hands underneath the stripping mechanism itself, there are none in the area where the amputation occurred.

13. The PRO Safety Guide appears to be an incomplete document with comments intended for Home Depot employees, as opposed to customers or consumers. More importantly, there are no safety instructions or warnings other than the below:

3



**Exhibit 1.** The complete Rental Agreement and operation guides accompanying the agreement when rented on June 19, 2022, are attached. It includes EDCO and Home Depot branding. **See Exhibit 1.**

14.     The RIP-R Safety Guide contains substantially similar general safety guidelines without specific warnings:



To make matters worse, the RIP-R Safety Guide refers customers to Safety and Operational Information Video and Operator Manual at www.generalequip.com:

> **Website and Contact Info**
> If you require assistance during the use of the RIP-R-STRIPPER, contact your local Tool Rental Center or the General Equipment Company Customer Service Department: 800.533.0524. Scan the QR code on the RIP-R-STRIPPER data plate with a smart phone or other device to gain access to: product literature, the Safety and Operational Information Video and the Operator Manual. Or, visit www.generalequip.com for additional information.

4

However, when attempting to access the Safety and Operation Information Video by attempting to access the web address provided at the URL hyperlink above, the server for said URL cannot be found.

15.     Both "safety guides" refer to a QR code decal a user may scan, but the QR code on the actual floor stripper directs a user to the following YouTube clip entitled "Home Depot – EDCO Tile Shark Training": https://youtu.be/I4L6zAxQt4c?t=119. The Home Depot Training video includes a section relevant to the injury mechanism here on adjusting the angle of the floor stripper:



As is apparent from the above screen capture of the Home Depot Training video, the adjustment may be made without the user wearing gloves. More importantly, no warnings related to hand placement appear anywhere in the area where hand contact may be required to accomplish desired angle adjustment.

5

16. Comparing the physical appearance of the floor stripper rented by Mr. Sweeney with the physical appearance of the floor stripper in the Home Depot Training video leads one to the conclusion that the floor stripper in question is substantially the same type as that in the YouTube clip. However, the floor stripper used by Mr. Sweeney, did not have a rubber housing surrounding the Adjustment Bar beneath the horizontal plate ("Latch Support Weldment") where the adjustment plunger ("Latch, Spring ½ Snap Lock") is located (see below):



No rubber housing surrounding Adjustment Bar.

As can be seen in the instructional video and on the floor stripper in question, there are no warnings on the Latch Support Weldment to indicate danger to a user's hands due to sharp components.

17.    Upon closer inspection of the floor stripper in question, it can be determined that the floor stripper in question is an EDCO TS-8 Tile Shark ("Tile Shark").  The Operator's Instruction Manual found at www.edcoinc.com for the Tile Shark likewise does not contain any warnings related to the Latch Support Weldment or user hand placement in relation thereto when adjusting the height or angle of the Tile Shark.

18.    The Operator's Instruction Manual does however define appropriate warning symbols about which a user should be knowledgeable.



**Safety Symbols**


This symbol means that the guards must remain in place while the engine/motor on the machine is running because death or personal injury may result.
(Yellow background with black pictogram and black outline)


This symbol means that there are moving parts and if feet/fingers/digits are inserted under any edge of the cutter/grinder/saw cover while the engine/motor on the machine is running that personal injury and loss of foot/fingers/digits may result.
(Yellow background with black pictogram and black outline)


This symbol means the surface is HOT and that if fingers/digits/hands or any bare or unprotected skin comes in contact with this surface or hot accessory, possible serious burns and personal injury may result.
(Yellow background with black pictogram and black outline)


This symbol means that potential hazardous voltages are present and the equipment must be properly grounded and extreme caution should be taken. If for any reason maintenance or repair is needed, insure that voltage(s) are disconnected at the machine and the source unless (be cautious) voltage needs to be present to troubleshoot the problem, then only qualified personal should work on "live" systems.
(Yellow background with black pictogram and black outline)


This symbol means that the machine is heavy if the machine needs to be lifted onto or off of a truck, loading dock etc. that proper technique or heavy duty lifting device should be used, personal injury could result.
(Yellow background with black pictogram and black outline)


This symbol means that dangerous chemicals, gases, dust particles and/or fumes are present including carbon monoxide. Proper ventilation must be maintained. Do not use gasoline/diesel/propane powered equipment indoors.
(Yellow background with black pictogram and black outline)


This symbol means that there are sharp components and if feet/fingers/digits come in contact personal injury or death could result.
(Yellow background with black pictogram and black outline)


This symbol means hazardous pressures are present. Caution should be exercised to prevent personal injury or damage to equipment. Face, eye and head protection should be used.
(Yellow background with black pictogram and black outline)

This symbol means explosive and hazardous vapors are present. Caution should be exercised to prevent personal injury to face and eyes. Breathing and personal protection should be used when servicing.
(Yellow background with black pictogram and black outline)

Printed in USA
©2017 sk
Page 8
100 Thomas Johnson Drive, Frederick, MD 21702-4600 USA
Phone (301) 663-1600 • 1-800-638-3326
Fax (301) 663-1607 • 1-800-447-3326
Website: www.edcoinc.com • Email: techsupport@edcoinc.com


A Division of Equipment Development Company, Inc.

Crucial to the mechanism of injury here: neither the Home Depot Training Video, the Tile Shark itself nor the Operator's Instruction Manual contain any warning whatsoever with respect to the danger the Latch Support Weldment and Adjustment Bar present to a user's hands, or provide instruction as to appropriate hand placement during the angle adjustment process.

19.     The only relevant instructions on adjusting the angle of the Adjustment Bar appear on the Latch Support Weldment itself ("sticker instructions"):



The sticker instructions convey basic information to the user: (1) that the load must be taken off the spring-loaded adjustment plunger ("Latch, Spring ½ Snap Lock"); and the adjustment plunger must be pulled to adjust the angle.

20.     What the sticker instructions do not convey is that pulling the adjustment plunger will create a dead fall for the weight of the machine onto the metal stopper welded onto the Adjustment Bar and hidden from a user's view by the Latch Support Weldment (as indicated in blue oval below). Yet, it is forseeable that a user will intuitively place a hand on the Latch Support Weldment to remove weight off the adjustment plunger in order that the adjustment plunger can be pulled laterally to adjust the angle of the Tile Shark.



9

### B. The Injury

21. On June 19, 2022, Mr. Sweeney was in the process of adjusting the angle of the Tile Shark. As a result of the failure of Defendants to provide appropriate instructions, necessary warnings and a reasonably safe design, Mr. Sweeney placed his left hand and thumb on the forward-facing portion of the Latch Support Weldment and gripped the edge to lift the weight of the machine resting on the adjustment plunger, in order to pull the adjustment plunger as is required to adjust the angle of the Tile Shark. Upon pulling the adjustment plunger, the weight of the floor stripper fell on his left thumb and severed it as the edge of the Latch Support Weldment fell on the metal stopper obscured from a top side view and located beneath the Latch Support Weldment. The injury to Mr. Sweeney's left thumb is pictured below:





The injury is significant and has resulted in the loss of use of Mr. Sweeney's left thumb and limited the use of Mr. Sweeney's left hand.

### C. Rental Return

22.     When returned, Home Depot advised that Mr. Sweeney should not fill out an injury report, because they would credit him for the cost of the rental equipment.  See **Exhibit 2.**

### V.  CAUSE OF ACTION I:  STRICT PRODUCTS LIABILITY

23.     Plaintiff incorporates for all purposes, the preceding paragraphs of this complaint. The Tile Shark, placed into the stream of commerce by Defendants, was defectively designed and marketed in such a defective condition that it was unreasonably dangerous within the meaning of Section 402(A) Restatement (Second) of Torts in the following particulars, including but not limited to:

   a. Failing to properly warn of the hazards and/or guard against the hazards associated with the angle adjustment of the Tile Shark in question;

11

    b. Failing to provide adequate instructions to the consumer or end-user of the Tile Shark in relation to proper hand placement while adjusting the angle of the Tile Shark;

    c. Failing to maintain the Tile Shark in a safe condition;

    d. Failing to properly design the Tile Shark to limit the risk of hand injury while adjusting the angle of the Tile Shark; and

    e. Failing to provide a safer alternative design that would have prevented or significantly reduced the risk of Plaintiff's injuries, without substantially impairing the utility of the Tile Shark.

24. The Tile Shark in question was being used as intended by Mr. Sweeney at the time of the injury in question.

25. The foregoing acts of omission or commission on the part of Defendants were a producing cause of the injuries suffered by Plaintiff in that Defendants' conduct was a substantial factor in bringing about the injuries suffered, and without which the injuries would not have occurred.

26. The foregoing acts of omission or commission on the part of Defendants were a producing cause of the damages suffered by Plaintiff, and without which such damages would not have occurred.

### V.  CAUSE OF ACTION II:  NEGLIGENCE

27. Plaintiffs incorporate by reference the foregoing paragraphs of this complaint.

28. Defendants owed a legal duty to Plaintiff.  Specifically, Defendants owed a duty to take affirmative action to control or avoid increasing the danger from a foreseeable risk

12

of harm that had been created by Defendants' conduct. Based on the foregoing, it was entirely foreseeable to Defendants that end users or consumers would adjust the height of the Tile Shark in the manner described above.

29. Defendants owed a duty to use reasonable care in the design, maintenance and provision of proper instructions and warnings related to adjusting the height of the Tile Shark. Defendants breached their duty to Plaintiff by:

   a. Failing to properly warn of the hazards and/or guard against the hazards associated with the angle adjustment of the Tile Shark in question;

   b. Failing to provide adequate instructions to the consumer or end-user of the Tile Shark in relation to proper hand placement while adjusting the angle of the Tile Shark;

   c. Failing to maintain the Tile Shark in a safe condition;

   d. Failing to properly design the Tile Shark to limit the risk of hand injury while adjusting the angle of the Tile Shark; and

   e. Failing to provide a safer alternative design that would have prevented or significantly reduced the risk of Plaintiff's injuries, without substantially impairing the utility of the Tile Shark.

30. Defendants' breach of duty proximately caused injury to the Plaintiff, which resulted in damages, the specifics of which are discussed in more detail below.

## VI.  DAMAGES

31. As a result of the incident made the basis of this suit, Mr. Sweeney has sustained injuries and seeks the following damages:

    a. Medical expenses in the past and future;

    b. Permanent physical impairment in the past and future;

    c. Pain and suffering, mental anguish, inconvenience, and loss of enjoyment of life in the past and future;

    d. Disfigurement in the past and future;

    e. Loss of earning capacity in the past and future; and

    f. All other relief, in law and in equity, to which this Plaintiff may be entitled.

## X.  JURY DEMAND

32. Plaintiff demands a trial by jury on all issues and claims so triable.

## PRAYER

WHEREFORE, Plaintiff Bryce R. Sweeney prays for an Order entering judgment in his favor and against Defendant HOME DEPOT U.S.A., INC. d/b/a "THE HOME DEPOT" and Defendant EQUIPMENT DEVELOPMENT CO., INC., jointly and severally, for his general and special damages, past, present, and future in an amount to be determined by the factfinder with pre-judgment interest from June 19, 2022 and post-judgment interest as allowed by law on said judgment, expert witness fees, filing fees, deposition expenses, attorneys fees, for a trial by jury pursuant to Rule 38, and for any such other relief as this Court may deem just and appropriate including all costs.

Dated:  May 12, 2023.      Respectfully submitted,

    /s/ *Christopher K. Gilbert*
    Colorado Atty. Reg. No. 40635
    The Burnham Law Firm, P.C.
    12737 E. Euclid Drive
    Centennial, CO 80111
    720/845-7001

720/845-7002 (Fax)
chrisg@burnhamlaw.com

Gregory P. Love
Texas Bar No. 24013060
(*pro hac vice* to be filed)
Steckler Wayne & Love PLLC
107 East Main Street
Henderson, Texas 75652
903/212-4444
903/392-2267 (Fax)
greg@swclaw.com

Daniel D. Delue
WA State Bar No. 29357
(*pro hac vice* to be filed)
DeLue Law PLLC
600 Stewart St., Suite 1115
Seattle, WA 98101-1242
206/508-3804
206/508-3817 (Fax)
ddd@d3law.com

**COUNSEL FOR PLAINTIFF**