**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-01208-STV

BRYCE R. SWEENEY,

     Plaintiff,

v.

HOME DEPOT U.S.A., INC. d/b/a "THE HOME DEPOT", and
EQUIPMENT DEVELOPMENT CO., INC.,

     Defendants.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

     This matter comes before the Court on Defendant Home Depot U.S.A. Inc.'s ("Home Depot") Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion") [#57]. The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##24; 28] This Court has carefully considered the Motion and related briefing, the case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

1

## I.    FACTUAL BACKGROUND[1]

On June 19, 2022, Plaintiff Bryce R. Sweeney rented a floor stripper – an "EDCO TS-8 Tile Shark" – from The Home Depot Store No. 1505 located in Denver, Colorado. [#55 at ¶¶ 11-12]  Plaintiff and Defendant entered into a Rental Agreement, Contract #: 496973 (the "Contract"), which details the terms of the rental and includes a Customer Safety and Operation Guide for a PRO Floor Stripper ("PRO Safety Guide") as well as a Customer Safety and Operation Guide for an FCS16 RIP-R-STRIPPER ® v1.1 ("RIP-R Safety Guide") (together the "safety guides").  [*Id*. at ¶ 12; *see generally* #62-1]  Both safety guides attached to the Contract refer to a QR code, which directs a user to a YouTube clip entitled "Home Depot – EDCO Tile Shark Training."  [#55 at ¶ 16]  Plaintiff alleges that the floor stripper in question is substantially the same type as that in the Youtube clip; however, the floor stripper in question did not have the "rubber housing surrounding the Adjustment Bar beneath the horizontal plate."  [#55 at ¶ 17]

While using the floor stripper to demolish a tile floor, Plaintiff attempted to adjust the angle of the floor stripper by "plac[ing] his left hand and thumb on the forward-facing portion of the Latch Support Weldment and gripp[ing] the edge to lift the weight of the machine resting on the adjustment plunger, in order to pull the adjustment plunger as is required to adjust the angle of the [floor stripper]."  [*Id*. at ¶ 22]  This action caused the

---

[1] The facts are drawn from the allegations in Plaintiff's First Amended Complaint [#55], which the Court accepts as true at this stage of the proceedings. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)). The Court also finds it appropriate to consider the documents that Plaintiff incorporates into the Complaint by reference [*see* #62] in assessing the sufficiency of Plaintiff's allegations, because the documents are central to Plaintiff's claims and the parties do not dispute their authenticity. *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002); *U.S. Olympic Comm. v. Am. Media, Inc*., 156 F. Supp. 2d 1200, 1204 (D. Colo. 2001).

weight of the floor stripper to fall on his left thumb, which resulted in a partial thumb amputation. [*Id*. at ¶¶ 11, 22]  Plaintiff now has limited use of his left hand.  [*Id*. at ¶ 22]

Plaintiff initiated this action on May 12, 2023.  [#1]  The operative First Amended Complaint (the "Complaint") brings five causes of action: (1) strict products liability [#55 at ¶¶ 24-27]; (2) negligence [*id*. at ¶¶ 28-31]; (3) breach of warranty [*id*. at ¶¶ 32-35]; (4) product misrepresentation [*id*. at ¶¶ 36-41]; and (5) joint venture/partnership [*id*. at ¶¶ 42-44].  Plaintiff seeks monetary damages. [*Id*. at ¶ 45]

On October 4, 2023, Home Depot filed the instant Motion seeking dismissal of all of Plaintiff's claims.  [#57]  Plaintiff has responded to the Motion [#63] and Defendant has filed a reply [#64].

## II.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they

encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"   *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."   *Id*. (quoting *Twombly*, 550 U.S. at 556).   The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."   *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.   ANALYSIS

The Motion argues Plaintiff's claims should be dismissed because Defendant is an "innocent seller" pursuant to the Colorado Products Liability Act ("CPLA") (Col. Rev. Stat. §13-21-401, et seq.), which bars all of Plaintiff's claims [#57 at 7-9].   In the alternative, the Motion argues the Contract between the parties contains exculpatory clauses which fully foreclose Defendant's liability for negligence [*id*. at 10-14], and Plaintiff failed to allege a plausible claim of joint venture and/or partnership [*id*. at 14-15].   The Court first performs a choice of law analysis and then addresses these arguments in turn.

### A.   Choice of Law

"A federal court in a diversity case must apply the choice of law principles of the forum state."   *Dresser Indus., Inc. v. Sandvick*, 732 F.2d 783, 785 (10th Cir. 1984) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)).   This Court is therefore bound to apply Colorado choice of law principles.   *Id*.   Colorado follows the

Restatement (Second) of Conflict of Laws (1971) ("the Restatement") for both contract and tort actions. *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014).

The Court begins with Plaintiff's breach of warranty claim which sounds in contract. *See Richard O'Brien Companies v. Challenge-Cook Bros.*, 672 F. Supp. 466, 467, 469 (D. Colo. 1987) (applying contract choice of law principles to breach of warranty claims). Under Colorado law, courts "will apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern." *Target Corp. v. Prestige Maint. USA*, Ltd., 351 P.3d 493, 497 (Colo. App. 2013) (citing *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994)). Here, the parties chose to apply Georgia law to contract disputes. [#62-1 at 7 ("This Agreement will be construed in accordance with the laws of the State of Georgia.")] The Court finds the parties' choice of law is effective, and Georgia law will govern Plaintiff's contract claim.

Plaintiff's strict products liability, negligence and product misrepresentation claims sound in tort, and therefore tort choice of law principles apply.[2]   *See*

---

[2] Courts in Colorado have applied tort choice of law principles to tort claims even where the parties have a contractual choice of law provision. *Gunn v. Carter*, No. 13-cv-2197-WJM-MEH, 2016 WL 7899902, at *8 (D. Colo. June 13, 2016) (applying Colorado law to plaintiff's tort claims despite an Ohio choice of law provision that governed the plaintiff's contract claims); *Bio Med Techs. Corp. v. Sorin CRM USA, Inc.*, No. 14-cv-0154-WJM-CBS, 2015 WL 428580, at *1 (D. Colo. Jan. 30, 2015) (noting that a contract's choice of law provision "only applies to Plaintiff's breach of contract claim, not its tort claims"); *McWhinney Centerra Lifestyle Ctr. v. Poag & McEwen Lifestyle Centers-Centerra LLC*, 486 P.3d 439, 444 (Colo. App. 2021) (applying Colorado law to tort claims despite Delaware choice of law provision); *see also Kipling v. State Farm Auto. Ins. Co.*, 159 F. Supp. 3d 1253, 1266 (D. Colo. Feb. 3, 2016) (noting that choice of law provision

Restatement (Second) of Torts §§ 402A, 402B (1965) (setting forth doctrines of strict products liability and product misrepresentation); *Richard O'Brien Companies*, 672 F. Supp. at 468 (applying tort choice of law principles to negligence claim in product liability action). Colorado follows the "most significant relationship" test laid out in the Restatement, which takes into account: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence[,] nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).   While the parties have not briefed the choice of law question, the Court finds the most significant relationship test favors Colorado.   Here, the floor stripper was used and caused injury in Colorado [#55

---

"became a moot point when the court determined that the claim sounded in tort"); *Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2013 WL 2114372, at *5 (D. Colo. May 15, 2013) ("Tort claims such as breach of fiduciary duty and negligence do not arise out of a contract" and therefore the contract's choice of law provision does not apply to those claims.).   The Court notes, however, that courts outside the jurisdiction apply contractual choice of law provisions to tort claims when the choice of law provision is broadly worded and makes clear that the parties intended to apply the choice of law provision to tort claims. *Richardson v. Allstate Fire & Cas. Ins. Co.*, 637 F. Supp. 3d 1186, 1194 n. 7 (collecting cases).   The parties have not identified, nor has the Court found, any Colorado Supreme Court cases directly addressing this issue.   But, even if the Colorado Supreme Court were to follow the latter line of cases, the choice of law provision in the Contract here is incredibly narrow and would not extend to Plaintiff's tort claims.    [#62-1 at 7 ("This Agreement will be construed in accordance with the laws of the State of Georgia.")]; *Triad Grp. v. Vi-Jon, Inc.*, 879 F. Supp. 2d 645, 649 (E.D. Wis. 2012) (contract stating that the "Purchase Order and the Agreement shall be construed under the laws of the State of Missouri" did not clearly establish the parties' intent to apply Missouri law to tort claims); *Lynch v. Math-U-See, Inc.*, No. 3:11-CV-233-JD, 2012 WL 13089660, at *3 (N.D. Ind. Dec. 27, 2012) (collecting cases for the proposition that choice of law provisions similar to those in the Contract are narrow and do not extend to tort claims), *report and recommendation adopted in part, rejected in part on other grounds*, 2013 WL 796531 (N.D. Ind. Mar. 4, 2013).   Thus, the Court concludes that it must apply tort choice of law principles to Plaintiff's tort claims.

at ¶22]; Plaintiff is domiciled in Colorado [*id*. at ¶1; #38]; Defendant is a citizen of Delaware and Georgia [#36]; and the parties entered their contractual relationship in Colorado [#55 at ¶11; #62-1 (address of The Home Depot Rental Center is 500 S Santa Fe Dr., Denver, CO 80223)]. Given these connections, the Court will apply Colorado law to Plaintiff's tort claims.[3]

### B.    The CPLA's Innocent Seller Provision

The CPLA provides that "[n]o product liability action[4] shall be commenced or maintained against any seller of a product unless said seller is also the manufacturer of said product or the manufacturer of the part thereof giving rise to the product liability action." Colo. Rev. Stat. § 13–21–402(1).   This "innocent seller" provision shields a defendant that has done nothing more than sell a defective product.  Defendant argues

---

[3] For discussion on the joint venture/partnership claim, see *infra* Section III.B.4.

[4] "'Product liability action' means any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product."  Colo. Rev. Stat. § 13-21-401.  Product liability actions implicate "those tort actions which seek damages for injuries and collateral damage caused by defective products." *Carter v. Brighton Ford, Inc.*, 251 P.3d 1179, 1187 (Colo. App. 2010); *see also Mandy's Ltd v. Salon & Beauty Source, Inc.*, No. 15-CV-01571-WYD-MJW, 2016 WL 7868829, at *5 (D. Colo. June 3, 2016) ("[T]he product liability act does not bar only tort actions involving defects in products, but can bar other types of actions.")  The Court finds the definition generally encompasses all of Plaintiff's claims as they are based upon defects in the floor stripper's design, manufacturing, warnings, and instructions, rendering the product unreasonably dangerous. [#55]; *see Loughridge v. Goodyear Tire & Rubber Co.*, 207 F. Supp. 2d 1187, 1191 (D. Colo. 2002) (finding breach of warranty claims were based on product liability).  Plaintiff's joint venture/partnership claim, however, is unique.  Though not addressed by the parties, as addressed below, it is not clear to the Court that this should be a separate claim, as opposed to a manner of holding Home Depot liable as a manufacturer.  *See infra* Section III.B.4.

that, pursuant to this provision, Plaintiff's claims fail as a matter of law because Home Depot is the lessor of the floor stripper and not the manufacturer.  [#57 at 7]

Plaintiff responds that the innocent seller provision does not apply because Home Depot is a manufacturer of the product.  [#63 at 14-16][5]  The CPLA defines "manufacturer" as "a person or entity who designs, assembles, fabricates, produces, constructs, or **otherwise prepares a product** or a component part of a product prior to the sale of the product to a user or consumer."  Colo. Rev. Stat. § 13–21–401(1) (emphasis added).  The term is broadened to include:

> **[1] any seller who has actual knowledge of a defect in a product or**
> [2] a seller of a product who creates and furnishes a manufacturer with specifications relevant to the alleged defect for producing the product or
> [3] who otherwise exercises some significant control over all or a portion of the manufacturing process or
> [4] who alters or modifies a product in any significant manner after the product comes into his possession and before it is sold to the ultimate user or consumer.

*Id*. (spaces, numbers and emphasis added).

Plaintiff argues that, pursuant to this definition, Defendant is a manufacturer because: (1) Defendant "otherwise prepare[d] the product" prior to providing it to Plaintiff [#63 at 14], and (2) Defendant had actual knowledge of a defect in a product prior to producing it to Plaintiff [#63 at 16].  Plaintiff also argues, in the alternative, that (3) Defendant is still liable under the apparent manufacturer doctrine where Defendant and Equipment Development Co. Inc. ("EDCO") jointly provided training materials,

---

[5] The Court refers to the actual page number of the .pdf document uploaded to the Electronic Court Filing system, rather than to the numbering printed on each page.

marketed, and labeled the floor stripper in question.[6]   [#63 at 15-16]   The Court will address each argument in turn.

### 1.   Otherwise Prepared the Product

Plaintiff does not allege that Defendant participated in the actual design or production process of the floor stripper.   Rather Plaintiff alleges that Defendant "prepared the product" by: (1) "maintain[ing] the [floor stripper] for lease," (2) providing Plaintiff with Home Depot safety guides, (3) labeling the floor stripper with its own label, and (4) providing Plaintiff a QR code directing him to a website with The Home Depot trademark and training instructions.   [##63 at 14; 55 at ¶¶ 12, 16-21]   The Court disagrees that any of these actions qualify as "otherwise prepar[ing] the product" and, as a result, they do not convert Home Depot into a manufacturer.

First, while the CPLA may impose liability on entities who engage in leasing products, leasing alone does not satisfy the definition of manufacturer.   *See* Colo. Rev. Stat. § 13-21-401(1) (classifying a manufacturer as one that actually "designs, assembles, fabricates, produces, constructs, or otherwise prepares a product"); *Kaplan v. C Lazy U Ranch*, 615 F. Supp. 234, 237 (D. Colo. 1985) (finding strict products liability did not apply to lease of horse and saddle).   Plaintiff does not offer the Court an interpretation of the key phrase "otherwise prepares the product," nor does Plaintiff provide any authority for the proposition that "maintaining a product for lease" qualifies as "otherwise prepar[ing] a product."   [*See generally* #63]   The Court similarly finds no authority to support this argument.

---

[6] As discussed in detail below, though not addressed by the parties, Defendant could be considered a manufacturer if it were in a joint venture with EDCO.   *See infra* Section III.B.4.

Similarly, Plaintiff does not provide any authority for the proposition that distributing safety guides or instruction manuals to customers qualifies as "otherwise prepar[ing] a product."  [*See generally* #63]  The Court similarly finds no authority to support this argument.

And as to Plaintiff's third and fourth theories, while a seller who places a private label on a product without disclosing the actual manufacturer may be liable under the CPLA, "the plain meaning of the phrase 'otherwise prepares a product' does not encompass use of one's name on that product." *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1223-24 (10th Cir. 1997); *see also* Colo. Rev. Stat. § 13-21-401(1) ("A seller not otherwise a manufacturer shall not be deemed to be a manufacturer merely because he places or has placed a private label on a product if he did not otherwise specify how the product shall be produced or control, in some significant manner, the manufacturing of the product and the seller discloses who the actual manufacturer is.").  Here, Defendant affixed EDCO's label to the Rental agreement of the EDCO TS-8 Tile Shark and the associated safety guides. [##55 at ¶¶ 13, 19;  62-1]  And the QR code provided by Defendant (which reads: "The Home Depot Scan for Training Material **EDCO**") [#63 at 5 (emphasis added)] directs users to a YouTube training video authored and uploaded by an EDCO YouTube channel; the video begins with a prominent display of the EDCO logo; the floor stripper in the video is labeled with "EDCO"; and the video ends directing consumers to EDCO social media channels, edcoinc.com and to "call EDCO: 800-638-3326." [#55 at ¶ 16]; EDCOusa, *Home Depot –EDCO Tile Shark Training*, YouTube (Dec. 27, 2017),   https://www.youtube.com/watch?v=I4L6zAxQt4c&t=119s.   Thus, as discussed in additional detail below, Home Depot made clear that Plaintiff was

operating an EDCO product.   *See infra* Section III.B.3 (analyzing Plaintiff's apparent manufacturer argument).   Indeed, Plaintiff alleges that he knew the floor stripper was manufactured by EDCO.   [*See* #55 at ¶18 ("Upon closer inspection of the floor stripper in question, it can be determined that the floor stripper in question is an EDCO TS-8 Tile Shark.")]   As a result, the Court cannot conclude that Home Depot's labeling activity transforms Home Depot into a manufacturer.[7]

Accordingly, the Court finds Plaintiff has not sufficiently alleged that Defendant "otherwise prepare[d] the product."

## 2.    Actual Knowledge of a Defect

Defendant may qualify as a manufacturer, precluding application of the innocent seller statute, if Defendant-seller had actual knowledge of a defect in the product.  Colo. Rev. Stat. § 13–21–401(1).   "At the motion to dismiss stage, Plaintiff is not required to demonstrate, nor would it be feasible for [him] to do so in the absence of any discovery, that Defendant actually knew of defects in the product it sold. Instead . . . Plaintiff must only plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Church v. Dana Kepner Co., Inc.*, 11-cv-02632-CMA-MEH, 2012 WL 4086517, at *3 (D. Colo. Sept. 16, 2012) (quoting *Twombly,* 550 U.S. at 570); *see also Breaux v. Am. Family Mut. Ins. Co.,* 554 F.3d 854, 862 (10th Cir.2009) (quoting Fed. R. Civ. P. 8(a)(2) for the

---

[7] While Plaintiff's response also argues that the floor stripper was labeled with The Home Depot trademark [# 63 at 2-3], Plaintiff makes no such allegation in the Complaint [*see generally* #55], and the Court therefore cannot consider this additional purported fact.  And, in any event, as discussed above, merely affixing a Home Depot label to the product would not transform Home Depot into a manufacturer, provided Home Depot was not the apparent manufacturer, an issue addressed in more detail below.  *See infra* Section III.B.3.

familiar proposition that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief").

Relevant here, Plaintiff alleges: (1) the floor stripper used by Plaintiff "did not have a rubber housing surrounding the Adjustment Bar beneath the horizontal plate" like the floor stripper in the YouTube video [#55 at ¶ 17]; (2) "[t]he Tile Shark, placed into the stream of commerce by Defendants, was defectively designed and marketed" [*id.* at ¶ 24]; and (3) "Home Depot . . . provided the Tile Shark to [Plaintiff] with the dangerous defect related to the hidden Latch Support Weldment" (*i.e.*, the lack of a rubber housing) [*id.* at ¶ 34].  But Plaintiff's Complaint fails to allege any facts that show Defendant was *aware* of the defect related to the hidden Latch Support Weldment.[8]  As a result, Plaintiff's allegations fail to allege facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555; *see also Oshima v. Kia Motors Corp.*, No. 11-CV-03349-REB-MEH, 2012 WL 1578397, at *6-7 (D. Colo. May 4, 2012) (dismissing product liability claim against seller of vehicle where plaintiffs did not allege that the seller was aware of the defect because the plaintiffs "cannot assert a viable products liability claim against [the defendant] for merely selling an allegedly defective car"); *cf. Church*, 2012 WL 4086517, at *2-3 (finding Plaintiff sufficiently alleged facts that Defendant had actual knowledge of a defect where Defendant allegedly received information from the manufacturer about the hazardous characteristics of the subject asbestos cement pipe).

---

[8] In his response, Plaintiff argues that "to the extent Home Depot removed the rubber housing on the Tile Shark, prior to producing it to [Plaintiff] as part of the lease," Home Depot would have actual knowledge of the defect.  [#63 at 16]  But the Complaint does not allege that Home Depot removed the rubber housing and this speculative statement found in a response brief does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Accordingly, the Court finds that Plaintiff has not adequately alleged that Defendant is a manufacturer because it was a seller with actual knowledge of the defect.

### 3.    Apparent Manufacturer

Plaintiff argues Defendant is nevertheless subject to liability as an apparent manufacturer.  [#63 at 15-16]  An apparent manufacturer is a seller who holds itself out as the manufacturer—*e.g.*, by placing a private label on the product without disclosing the identity of the actual manufacturer. *See Bennington v. Stryker Corp*., No. 1:20-cv-01211-CNS-KLM, 2023 WL 4136656, at *7-8 (D. Colo. June 22, 2023) (Plaintiff adduced facts tending to show that Defendant Stryker held itself out as the manufacturer where "Stryker" was listed as the manufacturer of the device on the implant medical record and the device's true manufacturer was not listed); *Heinrich v. Master Craft Eng'g, Inc.*, 131 F. Supp. 3d 1137, 1161 (D. Colo. 2015) ("Plaintiff has provided sufficient evidence establishing that Jeg's held itself out to consumers as the manufacturer of the flexplate and did not otherwise disclose that Autocraft and/or Master Craft were the actual manufacturers."); *Watson v. Dillon Companies, Inc*., 797 F. Supp. 2d 1138, 1162 (D. Colo. 2011) ("Defendants may be considered an apparent manufacturer under the statute . . . because they did not disclose the actual manufacturer of the product.").  In *Long v. United States Brass Corp*., the court provided the following justification for imposing liability on an apparent manufacturer:

> The primary rationale for imposing liability on the apparent manufacturer of a defective product is that it has induced the *purchasing public* to believe that it is the actual manufacturer, and to act on this belief—that is, *to purchase the product in reliance* on the apparent manufacturer's reputation and skill in making it.

333 F. Supp. 2d 999, 1002 (D. Colo. 2004) (quoting *Hebel v. Sherman Equipment*, 442 N.E.2d 199, 203 (Ill. 1982)) (emphasis in original).

Plaintiff alleges that Defendant is the apparent manufacturer where Defendant and EDCO jointly provided training materials, and marketed and labeled the floor stripper in question. [#63 at 15-16]  However, neither the Complaint nor the Response provides legal support for the contention that jointly labeling the floor stripper, providing training materials and marketing is sufficient to establish Defendant as the apparent manufacturer.  [*See* #63 at 15-16]  And the Complaint plainly demonstrates that Defendant disclosed the floor stripper's true manufacturer and held itself out as the lessor.  As noted, Defendant affixed EDCO's label to the Rental agreement of the EDCO TS-8 Tile Shark and the associated training manuals.  [##55 at ¶¶ 13, 19; 62-1] Moreover, the QR code provided by Home Depot directs users to a YouTube training video authored and uploaded by an EDCO YouTube channel; the video begins with a prominent display of the EDCO logo; the floor stripper in the video is labeled with "EDCO"; and the video ends directing consumers to EDCO social media channels, edcoinc.com and to "call EDCO: 800-638-3326." EDCOusa, Home Depot –EDCO Tile Shark Training, YouTube (Dec. 27, 2017), https://www.youtube.com/watch?v=I4L6zAxQt4c&t=119s.  Finally,  the  safety  guides provided by Home Depot tend to establish that it held itself out as the rental company, rather than the manufacturer.  [##62-1 at 8 ("The Home Depot **Rental**") (emphasis in original); *id.* at 10 ("The Home Depot Tool Rental Center")]  The Court finds Plaintiff fails to allege facts that Defendant "le[ft] the customer ignorant of who actually manufactured the product." *Long*, 333 F. Supp. 2d at 1002. To the contrary, the allegations

demonstrate Plaintiff was on notice that Defendant was not the manufacturer, which defeats the apparent manufacturer doctrine.

Accordingly, the Court finds that Plaintiff has not adequately alleged that Home Depot was the apparent manufacturer of the defective product.

### 4. Joint Venture/Partnership

Plaintiff's Fifth Claim alleges a joint venture/partnership.[9]   [#57 at 14-15] Defendant argues Plaintiff has failed to plausibly allege a joint venture/partnership.  The Court agrees.

A joint venture relationship exists when: "(1) [t]here [is a] joint interest in the property by the parties sought to be held as partners; (2) there [are] agreements, express or implied, to share in the profits and losses of the venture; and (3) there [are] actions and conduct showing co-operation in the project." *Sleeping Indian Ranch, Inc. v. W. Ridge Grp., LLC*, 119 P.3d 1062, 1069 (Colo. 2005) (emphasis omitted).[10]  Plaintiff's

---

[9] Though not addressed by the parties, it is not clear to the Court that this should be a separate claim, as opposed to a manner in which Home Depot could qualify as a manufacturer subject to liability under the CPLA. *Koch v. Kaz USA, Inc.*, 09-cv-02976-LTB-BNB, 2011 WL 2609863, at *2-3 (D. Colo. July 1, 2011) (analyzing joint venture in determining whether defendant was a manufacturer under the CPLA); *see also Sleeping Indian Ranch, Inc. v. W. Ridge Grp., LLC*, 119 P.3d 1062, 1063-64, 1069 (Colo. 2005) (analyzing joint venture in the context of an adverse possession assertion in a quiet title action); *Breckenridge Co. v. Swales Mgmt. Corp.*, 522 P.2d 737, 739 (Colo. 1974) (analyzing joint venture in the context of determining whether petitioner was liable for a workmen's compensation claim).  Because a plausibly pled joint venture could subject Home Depot to liability under the CPLA, *Koch*, 2011 WL 2609863, at *2-3, the Court addresses the joint venture claim in its analysis of the innocent seller provision.  Ultimately, the Court need not decide whether the joint venture is properly pled as a separate claim, or should have been pled in support of Plaintiff's assertions that Home Depot was a manufacturer, because Plaintiff has not plausibly alleged a joint venture.

[10] The Court notes that with respect to the joint venture claim, the Motion and the Response were briefed pursuant to Colorado law [##57 at 14; 63 at 21]  Again, it is not clear to the Court that this should have been pled as a separate claim.  Nonetheless,

only allegations in support of a joint venture are: (1) "Defendants' conduct . . . arose out of and was performed in whole or in part in furtherance of an express and/or implied joint venture and/or partnership," and (2) "Defendants' status as joint venturers or partners makes them jointly and severally liable for the injuries and damages incurred by Plaintiff."   [#55 at ¶¶ 42-44]   These allegations are conclusory and properly disregarded by the Court.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").   In his response, Plaintiff argues that "the elements have all been alleged: Defendants have a joint interest in the Tile Shark wherein they share at some level profits or losses; they share in the leasing of the Tile Shark; and they jointly shared in the preparation of the product for lease to [Plaintiff]."  [#63 at 21]   Noticeably absent from the Response is any citation to these allegations in the Complaint. Upon review of the Complaint, the Court does not find any allegations to support this argument.

Thus, the Court concludes that Plaintiff has failed to adequately allege a joint venture/partnership and that, as a result, such a theory cannot support either a manner of holding Home Depot liable as a manufacturer or a separate claim.  Accordingly, the Court ORDERS that the Motion be GRANTED to the extent it seeks to dismiss Claim V.

### 5.   Conclusion

The Court finds that Plaintiff has failed to allege that Defendant is a manufacturer or apparent manufacturer, thereby implicating the innocent seller provision of the CPLA.

---

because the parties have applied Colorado law, the Court will do the same*.  Grynberg v. Total  S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.")

The Court further concludes that Plaintiff has failed to plausibly allege a joint venture/partnership.  Plaintiff's strict liability (Claim I), negligence (Claim II), and product misrepresentation (Claim IV) claims are subject to, and therefore barred by, the CPLA. *See Bullock ex rel. Bullock v. Daimler Trucks North American, LLC*, No. 08-cv-00491-PAB-MEH, 2010 WL 1380724 at *2 (D. Colo. March 30, 2010) (noting 2003 amendment to innocent seller provision removing language limiting reach of statute to claims based solely on theories of strict product liability); C.R.S.§ 13–21–401(2) ("'Product liability action' means any action brought against a . . . seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury . . . caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in  the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product.").  While Plaintiff's breach of warranty claim (Claim III) may also sound in product liability, *Mandy's Ltd v. Salon & Beauty Source, Inc.*, No. 15-CV-01571-WYD-MJW, 2016 WL 7868829, at *5 (D. Colo. June 3, 2016) ("[T]he product liability act does not bar only tort actions involving defects in products, but can bar other types of actions."), the Court finds the CPLA does not impact said claim, because it is governed by Georgia Law.[11]  Accordingly, this Court ORDERS that the Motion be GRANTED to

---

[11] The Motion does not otherwise challenge Plaintiff's breach of warranty claim. [*See generally* #57]

the extent it seeks to dismiss Claim I, Claim II[12], Claim IV, and Claim V, but DENIED to

the extent it seeks to dismiss Claim III.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

Defendant's Motion to Dismiss [#57].   Specifically, the Motion is **GRANTED** to the

extent it seeks to dismiss Claims I, II, IV and V and those Claims are **DISMISSED**. The

Motion is **DENIED** to the extent it seeks to dismiss Claim III.


DATED:  February 14, 2024                              BY THE COURT:

                                                              s/Scott T. Varholak
                                                              United States Magistrate Judge

---

[12] Because the Court finds Plaintiff's negligence claim is barred pursuant to the CPLA, the Court does not need to address Defendant's argument that the exculpatory clauses in the Contract fully foreclose Home Depot's liability for negligence.  [#57 at 10-14]